Jacob N. Whitehead, Esq. SBN 266123
*Jacob@wemploymentlaw.com*
W EMPLOYMENT LAW, APC
7700 Irvine Center Drive, Suite 800
Irvine, CA  92618
Tel. (949) 674-4922

Attorney for Plaintiff, APRIL REISS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL REISS, an individual,<br><br>     Plaintiff,<br><br>     v.<br><br>JOHNSON CONTROLS, INC., a Wisconsin corporation; JOHNSON CONTROLS SECURITY SOLUTIONS, LLC, a Delaware limited liability company; and DOES 2 - 50, inclusive<br><br>     Defendant. | Case No. 8:24-cv-01080 DOC (SRMx)<br> Honorable Serena R. Murillo<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT AGREEMENT**<br><br>*(Declaration of Jacob N. Whitehead, Declaration of April Reiss and Proposed Order Concurrently Filed Herewith)*<br><br>**Date: July 31, 2025**<br>**Time: 1:30 p.m.**<br>**Dept.: 5-D**<br><br>**Filed: December 29, 2023**<br>**SAC Filed: Oct. 11, 2024**<br>**Removal: May 17, 2024**<br>**Trial Date: None Set** |

TO  ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2025, at 1:30 p.m.  in Courtroom 5-D of

the above captioned Court, located at 350 W. 1st Street, Los Angeles, CA 90012,

before the Honorable Serena Murillo, Plaintiff April Reiss ("Plaintiff") will and

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA SETTLEMENT

hereby does move the Court for an order granting preliminary approval of the class action and Private Attorneys General Act ("PAGA") settlement reached between Plaintiff and Defendants Johnson Controls, Inc. and Johnson Controls Security Solutions, LLC ("Defendants").  The proposed settlement is set forth in the accompanying Stipulation of Class Action and PAGA Settlement and Release Agreement (the "Settlement" or alternatively, the "Settlement Agreement") attached as **Exhibit 1** to the concurrently filed Declaration of Jacob N. Whitehead, (hereinafter, "Whitehead Decl.") in support of the Motion for Preliminary Approval. At the hearing, Plaintiff will, and hereby does, move this Court for an order:

A.)    Preliminarily Approving  the proposed Settlement Agreement, as fair, reasonable and adequate;

B.)    Approving distribution of the proposed Notice of Proposed Settlement of Class and PAGA Action ("Settlement Notice") attached to the Settlement Agreement as **Exhibit A**;

C.)     Approving the manner and method for Class Members to request exclusion from the Settlement, as set forth in the Settlement Notice**;**

D.)    Approving the manner and method for Class Members to dispute the covered Workweeks, as set forth in the Settlement Notice;

E.)    Appointing as Class Counsel Jacob N. Whitehead of W Employment Law, APC;

F.)     Approving as Class and PAGA Representative of the Class and LWDA, Plaintiff, April Reiss;

G.)    Approving the allocation of the PAGA Payment, as set forth in the Settlement Agreement;

H.)    Preliminarily approving Plaintiff's Counsel's Attorney's Fees and Costs;

I.)    Preliminarily approving the Service Award to Plaintiff;

J.)    Approving Apex Class Action LLC as the Settlement Administrator for

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

1    purposes of the administration of the Settlement and distribution of the

2    Settlement Notice;

3    K.)    Conditionally certifying the Class for settlement purposes only; and

4    L.)    Setting a Final Approval Hearing on the question of whether the

5    Settlement, should be finally approved as fair, reasonable, and

6    adequate and for the final approval of the Class Counsel Award,

7    Plaintiff Service Award, and Settlement Administration Costs.

8    This Motion is based upon the following memorandum of points and

9    authorities, the concurrently filed declarations of Jacob Whitehead and April Reiss,

10   the [Proposed] Order Granting Preliminary Approval, and the Stipulation of Class

11   Action and PAGA Settlement and Release (the "Settlement Agreement"); the

12   pleadings and papers on file in this case; and such argument and evidence as may be

13   presented at the hearing of this motion.

14   Respectfully Submitted,

15

16   DATED:  June 23, 2025                     W EMPLOYMENT LAW, APC

17

18   By:  _____

19        Jacob N. Whitehead, Esq.
         Attorney for Plaintiff, April Reiss
20       and the Putative Classes

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA SETTLEMENT

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION

      Memorandum of Points and Authorities . . . . . . . . . . . . . . . . . . . . . . . . .   4

II.   FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

III.   PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

IV.   SUMMARY OF THE SETTLEMENT TERMS . . . . . . . . . . . . . . . . . .   7

   A.  Monetary Terms and Defined Settlement Class. . . . . . . . . . . . . . . . . . . . . . . . . . .   7

   B.  Releases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

   C.  The Notice Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL. . . . . . . .   12

   A.   The Settlement Class Meets the Requirements for Certification. . . . . . .   13

   B.   The Class is Numerous and Ascertainable . . . . . . . . . . . . . . . . . . . . . . . .   14

   C.   Plaintiff's Claims Raise Common Issues of Law and Fact . . . . . . . . . . .   14

   D.   Plaintiff's Claims are Typical of the Class Members . . . . . . . . . . . . . . .   15

   E.   Plaintiff and Her Counsel Will Adequately Represent the Class . . . . . . .   16

   F.   Rule 23(b)'s Requirements Are Satisfied as Well . . . . . . . . . . . . . . . . .   16

VI.  THE SETTLEMENT'S TERMS ARE FAIR, REASONABLE AND
   ADEQUATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

   A.  Extensive Discovery Allowed the Parties to Make Informed Decisions

      Regarding Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

   B.  The Settlement Also Provides a Fair and Reasonable Resolution for the

      State of California and the PAGA Employees. . . . . . . . . . . . . . . . . . . . . . . .   22

   C.  The Proposed Attorneys' Fees And Costs Are Reasonable . . . . . . . . . . . . . . .   23

Table of Contents – Table of Authorities

D.   The Proposed Enhancement Award Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

E.   The Proposed Notice Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

VII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

Table of Contents – Table of Authorities

1

## TABLE OF AUTHORITIES

2

### CASES

Page

3

4

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*, No. 2:16-1747 WBS KJN, 2018 U.S.
Dist. LEXIS 20460 (E.D. Cal. 2018)............................................. 23

5

6

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)......................... 13, 18

7

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)............................. 15, 16

8

*Bates v. United Parcel Serv.*, 204 F.R.D. 440 (N.D. Cal. 2001)................. 15

9

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)..................... 21

10

11

*Carter v. Anderson Merch., LP*, No. EDCV 08-0025-VAP (OPx), 2010 U.S. Dist.
LEXIS 55581 (C.D. Cal. May 11, 2010................................... 22

12

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)............. 19, 26

13

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................... 26

14

*Eisenburg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)........................... 15

15

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000)................. 16

16

*Golba v. Dick's Sporting Goods, Inc.*, 238 Cal.App.4th 1251 (2015)............. 25

17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................... 13-15, 19

18

*Haralson v. U.S. Aviation Servs. Corp.*, 383 F.Supp.3d 959 (N.D. Cal. 2019)......... 22

19

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)............... 14

20

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................. 19-20

21

22

*Jordan v. NCI Grp., Inc.*, EDCV 16-1701 JVS (SPx), 2018 U.S. Dist. LEXIS 25297
(C.D. Cal. Jan. 5, 2018).............................................. 22

23

24

*Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWI-EPG, 2022 U.S. Dist. LEXIS
12812 (E.D. Cal. Jan. 22, 2022)........................................ 19

25

26

*Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCx), 2020 U.S. Dist.
LEXIS 177056 (C.D. Cal. Sep. 18, 2020)................................ 23

27

28

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013)........... 21

[ iii ]

Table of Contents – Table of Authorities

*Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268 (N.D. Cal. May 5, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). . . . . . . . . . . . . . . . 26

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). . . . . . . . . . . 18-20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272 (N.D. Cal. Aug. 25, 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006). . . . . . . . . . 14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Soto v. O.C. Commc'ns, Inc.*, No. 3:17-cv-00251-VC (N.D. Cal. Oct. 23, 2019). . . . . 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013). . . . . . . . . . . . . . . . 14, 17

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

## STATUTES

*Business and Professions Code §§ 16600 and 16600.1.* . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 15, 17,

*California Labor Code (including § 432.5 and PAGA provisions)* . . . . . . . . . . . . . . . . 6, 7, 15, 17

*California Labor Code – Private Attorneys General Act (PAGA)* . . . . . . . . . . . . . . . . 2, 5, 6

*Federal Rules of Civil Procedure, Rule 23 (a)and (b)* . . . . . . . . . . . . . . . . . . . . . . . . . . 13-16

[ iv ]

Table of Contents – Table of Authorities

*Federal Rules of Civil Procedure, Rule 23 (e)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13, 18-19, 23

SECONDARY TREATISES

*Manual for Complex Litigation § § 21.61 (4th ed. 2004)*. . . . . . . . . . . . . . . . . . . . . . .  13

*Manual for Complex Litigation § 21. (4th ed. 2004)*. . . . . . . . . . . . . . . . . . . . . . .  27

*4 Newberg on Class Actions §8.12* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

Plaintiff, April Reiss ("Plaintiff") seeks preliminary approval of the Stipulation of Class Action and PAGA Settlement and Release Agreement ("Settlement")  entered into with Defendants Johnson Controls, Inc. and Johnson Controls Security Solutions, LLC  (together, "Defendants") dated May 7, 2025. Plaintiff (on behalf of herself, the Class, LWDA, and the PAGA Aggrieved Employees) and Defendants have agreed to settle the Released Claims  in exchange for a non-reversionary Gross Settlement Amount ("GSA") of $165,000.00, which includes:

- Settlement Class Payments to approximately 150 Class Members who worked approximately 15,844 impacted workweeks;

- Ten Thousand Dollars allocated from the GSA for the PAGA Settlement Payment to be paid 75% of the PAGA Allocation to the Labor & Workforce Development Agency ("LWDA") and 25% of the PAGA Allocation to the Aggrieved Employees;

- A requested Plaintiff Service Award in an amount of up to Five Thousand Dollars ($5,000) to Representative Plaintiff;

- Requested Attorneys' Fees to Class Counsel not to exceed one-third of the GSA (currently estimated to be $55,000);

- Class Counsel's actual litigation costs up to Twenty Thousand Dollars ($20,000.00);

- Settlement Administration Costs to the Settlement Administrator, Apex Class Action, LLC in an amount not to exceed Five Thousand, Nine Hundred and Ninety Dollars ($5,990.00);

As further discussed below, the Settlement satisfies all of the criteria for preliminary approval. Accordingly, the Parties respectfully request that the Court grant preliminary approval of the Settlement, conditionally certify the proposed

4

Class for settlement purposes only, approve the Parties' proposed Notice of Proposed Settlement of Class and PAGA Action ("Notice" or "Settlement Notice")  to be disseminated to the Class Members, and schedule a final approval hearing in this matter.

II.    FACTUAL BACKGROUND

This is a wage and hour class action and a California Labor Code Private Attorneys General Act ("PAGA") action against Defendants, Johnson Controls, Inc. and Johnson Controls Security Solutions, LLC.  Defendants are a vast global enterprise that among other things design, produce and install fire HVAC and energy management systems and security equipment in both residential and commercial facilities throughout the United States including the State of California.  Plaintiff was employed as a security equipment sales account executive from November 1, 2019, to April 17, 2023. Plaintiff alleges that she and other similarly situated employees were wrongly classified as salaried exempt and thus were and are not properly compensated with accurate rates of pay, routinely worked 60+ hours per week without overtime pay, alleges they are and were denied lawful meal and rest breaks, nor are/ were they paid premium pay penalties for the rest and meal break violations, were not furnished with accurate wage statements, nor were they reimbursed for expenses incurred for required use of personal cellphones and internet, nor were such putative class members who separate from Defendants; employment during the Class Period, paid all of their earned wages at the time of the separation of their employment.

Plaintiff further alleges Defendants imposed an unlawful Conflict of Interest/Non-Compete Policy in violation of Business & Professions Code §§ 16600 and 16600.1 and failed to timely notify employees of the void nature of that policy as mandated by law by February 14, 2024.

The "Class" or "Class Members" are defined as:  All exempt sales employees who worked for Defendants in California at any time during the Class Period. The

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Class Period is defined as the time period beginning April 19, 2020, through the date of Preliminary Approval (the "Class Period").

The Settlement also resolves the claims of estimated 99 Aggrieved Employees defined as all exempt sales employees who worked for Defendant in California at any time during the PAGA Period, from May 12, 2022, through the date of preliminary approval (the "PAGA Period").

III.         PROCEDURAL BACKGROUND

On May 12, 2023, Plaintiff served a Notice pursuant to the California Labor Code Private Attorneys General Act ("PAGA") on the LWDA, to exhaust her administrative remedies under PAGA. She served an amended notice on February 16, 2024, and a second amended notice on October 11, 2024 (collectively, the "PAGA Notices").

On January 14, 2024, Plaintiff filed her initial complaint in Orange County Superior Court against Defendants titled *April Reiss v. Johnson Controls, Inc. et al.*, Case No. 30-2023-01371130—CU-OE-NJC.  [Whitehead Decl. ¶ 11]

On April 19, 2024, Plaintiff filed the First Amended Complaint, ("FAC") adding her class and PAGA claims.  On May 17, 2024, Defendant removed the action to the present Court.

On September 25, 2024, date Defendants took the deposition of Plaintiff.

Following initial discovery and the depositions, it became apparent that there was an unlawful Conflicts of Interest Policy that applied to the Class. It also became apparent that the claims for misclassification could be difficult to certify as a class.

On October 11, 2024, Plaintiff filed a Second Amended PAGA Notice adding claims related to the unlawful Conflicts of Interest Policy, asserting claims of Illegal Terms and Conditions of Employment in violation of *Labor Code* Section 432.5, and *Business & Professions Code* Section 16600 et seq and seeking to enforce those claims under the PAGA.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Simultaneously, Plaintiff filed the operative Second Amended Complaint adding causes of action related to the unlawful Conflicts of Interest Policy, asserting claims of Illegal Terms and Conditions of Employment in violation of Labor Code Section 432.5, and Business & Professions Code Section 16600 et seq and Fraudulent Concealment.

After five months of robust discussions regarding Plaintiff's claims and Defendants' asserted defenses, the parties agreed to participate in a private mediation, with Lisa Klerman, which was held on February 10, 2025. In the months leading up to the mediation, the parties conferred regularly, and Defendant produced documents relating to the relevant Conflicts of Interest Policies, and other policies and procedures related to the asserted claims. The discovery and information produced allowed Plaintiff's Counsel to determine the extent and frequency of the alleged violations in accordance with Plaintiff's contentions and to create an accurate damages model to assess the reasonableness of any settlement.

At mediation Plaintiff's counsel extensively discussed and analyzed the strengths and weaknesses of Plaintiff's claims, the risks of continued litigation and damages analyses with substantial and active assistance from mediation Klerman. [Whitehead Decl. ¶14]. After a successful mediation, the parties were able to reach a settlement, and executed a Memorandum of Understanding, setting out the key terms of the agreement. The final settlement occurred after extended arms' length negotiations, and the Parties worked over a period of months preparing the executed a long form Settlement Agreement on May 7, 2025. *Id.*

## IV.    SUMMARY OF THE SETTLEMENT TERMS

### A.    **Monetary Terms and Defined Settlement Class**

The following groups of individuals are covered by the Agreement:

1.) The Settlement Class Members, consisting of approximately 150 individuals who worked approximately 15,844 impacted workweeks during the Class Period; [Settlement § I. D; and § II. subsec. A. 2.]

7

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

2.) The Aggrieved Employees consisting of all exempt sales employees who worked for Defendants in California, at any time during the PAGA Period [Id. at § I. subsec. B]

3.) Defendants have agreed to pay a non-reversionary Gross Settlement Amount ("GSA") of $165,000.00 to settle all of the claims in this Action.   [See Id. at § I. subsec. O]  Aggrieved Employees will still be paid their pro rata share of the allocated PAGA settlement regardless of whether they opt of being Settlement Class Members.

An amount up to Five Thousand Dollars ($5,000) shall be paid to the Class Representative as an Enhancement Service Award Payment.  This amount shall be in addition to any amount Plaintiff may be entitled to under the terms of the Settlement Agreement.

4.)   Subject to the Court's approval, the Parties have selected Apex Class Action, LLC to act as the Settlement Administrator, which has provided a maximum cost estimate of an amount not to exceed  Five Thousand, Nine Hundred and Ninety Dollars ($5,990.00). [Settlement § I. subsec. II;  § III, subsec. 12]

5.)  The Parties agree that Ten Thousand Dollars of the GSA shall be allocated to resolving claims under the PAGA.  Seventy-Five Percent (75%) of the PAGA Payment will be paid to the LWDA and Twenty-Five Percent (25%) will be paid to the Aggrieved Employees.  [Settlement § III, subsec. Q., 11.) ]

6.) The $10,000 PAGA Settlement Payment, will be distributed pro-rata to PAGA Aggrieved based on the number of respective Pay Periods each Aggrieved Employee worked during the PAGA Period, divided by the total aggregate number of Pay Periods worked by all of the Aggrieved Employees during the PAGA Period. Each Aggrieved Employee's PAGA Payment Ration will then be multiplied by $2,500.00 (25% of the PAGA Payment) to calculate the individual's Aggrieved Employee Payment. [See Settlement  § III, subsec. Q., 2]

7.) Each Settlement Class Member's share will be distributed from the Net

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Settlement Amount, based upon the number of Eligible Pay Periods worked by each Settlement Class Member during the Class Period, as calculated by the Settlement Administrator, excluding any PAGA settlement amounts distributed under the PAGA Settlement Payment, less the applicable wage withholdings for the Wage Portion of the Class Settlement Payment.  For tax purposes ten percent of the Class Settlement Period will be taxed as wages (the "Wage Portion"); forty-five percent will be allocated as pre-judgment interest (the "Interest Portion"); and 45 percent will be allocated as penalties (the "Penalties Portion") with the Interest and Penalties Portions, reported as 1099 income and the Settlement Administrator will issue an IRS Form 1099 in connection with these payments. [See Settlement § III, subsec. Q., 3].  Funds from uncashed abandoned checks, based on a 180-day void date after the date of their transmission, will be transmitted to the California State Controller's Unclaimed Property Fund in the name of the Settlement Class Member who did not claim the funds. [See Settlement  § III, subsec. Q. 8]

## B. Releases

1.)    Released Class Claims

Upon the Funding Date[1], in exchange for the consideration set forth in the Settlement Agreement, the Class Members will be deemed to have release the Released Parties[2] from any and all claims asserted or that could have been alleged arising out of the facts, circumstances and primary rights at issue in the Action, the Operative Complaint and any amendments thereto, which occurred during the Class Period, however, expressly excluding claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers

---

[1] The "Funding Date" means the date by which the Defendants will pay the GSA to the Settlement Administrator, which shall be due within thirty (30) business days after the Effective Date.  The "Effective Date" is defined in Section I, subsec. M of the Settlement Agreement.

[2] "Released Parties are defined in Section I, subsec. FF of the Settlement Agreement (Whitehead Decl. Exhibit 1 thereto).

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

compensation and class claims outside of the Class Period (the "Released Class Claims"). [Settlement § I, subsec. DD; and § III B]

2.) Released PAGA Claims

Upon the Funding Date, in exchange for the consideration set forth in the Settlement Agreement, Plaintiff, the LWDA and each PAGA Employee will be deemed to have released the Released Parties from all claims for PAGA penalties asserted or that could have been asserted arising out of the facts, circumstances and primary rights alleged in the Operative Action and Plaintiff's letters to the LWDA of May 12, 2023 (erroneously dated Mar 1, 2023), February 16, 2024 and October 11, 2024, and thereafter will be precluded from bringing claims against Defendants and the Released Parties for the Released PAGA Claims.  [Settlement § III, subsec. C]

3.) Plaintiff's Release

In addition to Plaintiff's release of the Release Class Claims and the Released PAGA Claims, Plaintiff, in her individual capacity will release the Released Parties from, any and all claims, known and unknown, under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, arising as of the date of execution of this Agreement, including but not limited to claims arising from or related to her employment with Defendants, separation of employment from Defendants, and any acts that have or could have been asserted in any legal action or proceeding against Defendants, whether known or unknown, arising under any federal, state or local law or statute, including, inter alia, those arising under the California Labor Code, Fair Labor Standards Act, Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, Employee Retirement Income Security Act, National Labor Relations Act, California Corporations Code, California Business and Professions Code, California Fair Employment and Housing Act, California Constitution (all as amended), and law of contract and tort, as well as for discrimination, harassment, retaliation, wrongful termination, lost wages, benefits, other employment compensation, emotional distress, medical expenses, other

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

1   economic and noneconomic damages, attorney fees, and costs.  [Settlement §III,

2   subsec. D].

3       4.)    Settlement Administrator's Duties

4       The parties have agreed to the appointment of Apex Class Action, LLC

5   ("Apex") to perform the customary duties of Settlement Administrator, including

6   mailing the Notice of Pendency of Class Settlement to the Settlement Class Members

7   as directed by the Court; using standard devices to obtain forwarding addresses,

8   independently reviewing and verifying documentation associated with any requests

9   for exclusion and objections, resolving any disputes regarding Eligible Pay Periods,,

10  establishing the Qualified Settlement Fund ("QSF"); drafting and mailing the

11  settlement checks to Settlement Class Members; issuing IRS W-2 forms and IRS

12  1099 forms, reporting to taxing authorities; due diligence, fulfilling all reporting and

13  remittance obligations and performing such other tasks as set forth in the Settlement,

14  or as the Court may order. [Settlement § III, subsec. K]

15  **C.  The Notice Process**

16      The Settlement Administrator will send the Notice in approximately the form

17  attached to the Settlement Agreement as Exhibit A and as approved by the Court to

18  the Settlement Class Members by first class U.S. mail.   Within ten (10) days after

19  entry of the Court's order granting preliminary approval, Defendant will provide to

20  the Settlement Administrator the Class Data, containing each Settlement Class

21  Member's name, last-known address, last-known telephone number and social

22  security number, the number of pay periods that each Settlement Class Member

23  worked during the Class Period, and the number of PAGA Pay Periods that each

24  PAGA Aggrieved Employee worked during the PAGA Period.  [Settlement § I,

25  subsec T; § III subsec. L, 1.]  Upon receipt of the Class Data, the Settlement

26  Administrator will perform a search based on the National Change of Address

27  Database to update and correct any known or identifiable address changes.

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA SETTLEMENT

Within fourteen (14) calendar days after the Class Data is provided to the Settlement Administrator, the Settlement Administrator will mail the Notice of Pendency of Class Settlement to the Settlement Class Members by first class U.S. mail.  Any Notice returned to the Settlement Administrator as undeliverable on or before the Response Deadline will be re-mailed to the forwarding address, within seven (7) days of receiving the returned notice,  if any, on the returned envelope.  If there is no forwarding address, the Settlement Administrator will do a search for a new address.  by lawful use of skip-tracing, or other search using the name, address and/or Social Security number of the Class Member involved, and shall then perform a re-mailing, if another mailing address is identified by the Settlement Administrator. In addition, if the Settlement Notice sent to any Class Member who is currently employed by Defendants is returned to the Settlement Administrator as non-delivered and no forwarding address is provided, the Settlement Administrator shall notify Defendants. Defendants will request that the currently employed Class Member provide a corrected address and transmit to the Settlement Administrator any corrected address provided by the Class Member. Class Members who received a re-mailed Settlement Notice shall have their Response Deadline extended ten (10) days from the original Response Deadline. With the motion for Final Approval, Class Counsel will provide to the Court a declaration by the Settlement Administrator regarding due diligence, the mailing of the Notices, the number of requested exclusions, objections to Settlement and Eligible Pay Period disputes.

## V. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

A class action may only be settled with Court approval.  *See,* FRCP, 23(e). Approval of a class-action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and Reasonableness of the settlement is

presented. *Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. See *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998).

Rule 23 requires that all class-action settlements satisfy two primary prerequisites before a court may grant preliminary approval: (1) the settlement class must meet the requirements for class certification if it has not yet been certified; and (2) the settlement must be fair, reasonable, and adequate. *Fed. R. Civ. P. 23*(a)(e)(2); *Hanlon*, 150 F.3d at 1020. As discussed below, the Settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). [Whitehead Decl. ¶'s 17, 27-34] Accordingly, the Court should preliminarily approve the Settlement.

**A. The Settlement Class Meets the Requirements for Certification.**

It is well established that trial courts should use a less stringent standard for determining whether to certify a settlement class (as opposed to a litigation class) because no trial is anticipated for a settlement class. The case management issues inherent in determining whether to certify a class for litigation need not be confronted in the settlement context. See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  A class may be certified under Rule 23(a) if 1.) the class is so numerous that joinder of all members individually is impracticable; 2.) questions of law or fact are common to the class; 3.) the claims or defenses of the class representative are typical of the claims or defenses of the class; and 4.) the person representing the class is able to fairly and adequately protect the interests of all members of the class.  Fed. R. Civ. P. 23(a).  Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if :"the court finds that the questions of law or facts common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

at 23(b)(3). Here the Class meets all of these requirements, and the Parties have agreed to Rule 23 certification for purposes of the Settlement.  (Whitehead Decl. ¶'s 17-26; Settlement § III, subsec. HH]

## B.    The Class is Numerous and Ascertainable

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts routinely find that classes of at least 40 members satisfy numerosity. See, e.g., *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc*., 235 F.R.D. 474, 485 (E.D. Cal. 2006). The estimated 150 members of the Settlement Class, make joinder impracticable.  The members of the Class may be readily identified from Defendant's payroll records [Whitehead Decl. ¶ 18].

## C.    Plaintiff's Claims Raise Common Issues of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The showing needed to satisfy this requirement is "minimal." *Hanlon,* supra, 150 F.3d at 1020. "Indeed, Rule 23(a)(2) has been construed permissively.... The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019; see also *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

The Defendants' Conflict of Interest Policy (Policy No. 15-00.103.GLBL), uniformly applied to all exempt sales employees, constitutes a common question of law and fact. The policy's prohibition on competitive activities, requirement to sign

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

non-compete agreements, and Defendants' failure to notify employees of its void nature by February 14, 2024, as required by *Bus. & Prof. Code* § 16600.1(b), violate *Bus. & Prof. Code* §§ 16600, 16600.1, and Labor Code § 432.5. This uniform policy creates a shared legal issue resolvable through common proof, satisfying Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The policy ensures a "common nucleus of operative fact" for all class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiff submits that common questions of law and fact not only exist but predominate here.  [Whitehead Decl. ¶ 19]

Therefore, Plaintiff alleges that Defendants' policies and practices related to the alleged wage and hour violations apply to all Class Members, creating pervasive issues that are amendable to resolution on a class-wide basis.  Because these issues share a common nucleus of fact, involve the same legal theories and can be resolved at the same juncture, Plaintiff contends that the commonality requirement is satisfied for the Class for settlement purposes.

### D.    Plaintiff's Claims are Typical of the Class Members

Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims of the Class. This inquiry focuses on whether Plaintiff possesses the same interest and suffered the same injury as the Class Members, and the requirement is satisfied if Plaintiff's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.

The purpose of the typicality requirement is to ensure that class representatives are motivated to protect the interests of the class. See *Eisenburg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). "[T]he Ninth Circuit interprets Rule 23(a)(3) typicality permissively." *Bates v. United Parcel Serv*., 204 F.R.D. 440, 446 (N.D. Cal. 2001). See also *Armstrong v. Davis*, 275 F.3d 849,869 (9th Cir. 2001) ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.").

Plaintiff April Reiss's claims arising from the unlawful Conflict of Interest Policy are typical of the class's claims. As an exempt sales employee, Plaintiff was subject to the same policy, completed the required non-compete training, and signed a non-compete agreement.  Her experience mirrors that of the class, as the policy was uniformly applied company-wide, satisfying Rule 23(a)(3). *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). The policy's uniform imposition aligns Plaintiff's interests with those of absent class members, ensuring typicality.

**E.    Plaintiff and Her Counsel Will Adequately Represent the Class**

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show "1.) that she has the ability and incentive to represent the claims of the class vigorously; 2.) that she has  obtained adequate counsel and 3.) that there is no conflict between her claims and those asserted on behalf of the class.  See *Fry v. Hayt, Hayt & Landau,* 198 F.R.D. 461, 469 (E.D. Pa. 2000).

Here, Plaintiff submits that her claims are in line with and are not antagonistic to those of the Settlement Class Members. [Whitehead Decl. ¶ 21]  Plaintiff has prosecuted this action with the interests of the Settlement Class Members in mind. *Id.*  In addition, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and does not have any conflict with the Class.

**F.    Rule 23(b)'s Requirements Are Satisfied as Well**

Under Rule 23 (b)(3), Plaintiff must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

representation." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, at 545 (9th Cir. 2013).

The illegality of Defendants' Conflict of Interest Policy predominates over any individualized issues arising from the wage-and-hour claims. The policy's uniform application and statutory violations (Bus. & Prof. Code §§ 16600, 16600.1; Labor Code § 432.5) can be proven through common evidence, such as policy documents and training records, minimizing individual inquiries. [Whitehead Decl. ¶19-20.] While wage-and-hour claims (e.g., misclassification, overtime, meal/rest breaks) may involve some variability, these are secondary to the policy's pervasive impact, which affects all class members identically. *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 545 (9th Cir. 2013).

Plaintiff contends that the common questions raised in this action predominate over any individualized questions concerning the Class. [Whitehead Decl. ¶19-20.] The Class is therefore cohesive because resolution of Plaintiff's claims hinges on the alleged uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. As a result, Plaintiff submits that the resolution of the class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies and practices, and would not require inquiries specific to individual Class Members.

Plaintiff also contends that the class-action mechanism is a superior method of adjudication compared to a multitude of individual suits. [Whitehead Decl. ¶'s 23-24] To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

Here, the Settlement Class Members do not have a strong interest in controlling the litigation of their individual claims. [Whitehead Decl. ¶ 25] This action involves dozens of exempt sales employees with what Plaintiff contends are very similar, but relatively small, claims for monetary injury. *Id*. If the Settlement Class Members were to proceed on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Settlement Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. Thus, the class-action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and/or arbitrations.

The issues raised by this case are much better handled collectively by way of a class action. Manageability is not a concern in the settlement context. *Amchem*, 521 U.S. at 593. The Settlement Agreement provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. Accordingly, class treatment is efficient and warranted in this context, and the Court should conditionally certify the Class for settlement purposes.

## VI.    THE SETTLEMENT'S TERMS ARE FAIR, REASONABLE AND ADEQUATE

In deciding whether to approve a proposed class-action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Before making such a finding, the Court must consider whether (1) class representative and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; and (3) the relief provided for the class is adequate in light of: (a) the costs, risks, and delay of trial; (b) the effectiveness of any proposed method of distributing relief to the class; (c) the terms of any proposed award of

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

attorney's fees; and (d) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "While Rule 23(e) does not mandate that courts consider these same factors for purposes of determining whether preliminary approval is warranted, doing so often proves useful given the role these factors play in final approval determinations." *Lusk v. Five Guys Enters. LLC*, No. 1:17-cv-00762-AWIEPG, 2022 U.S. Dist. LEXIS 12812, at *6 (E.D. Cal. Jan. 22, 2022).

Included in the above analysis are considerations of 1.) the strength of the Plaintiff's case; 2.) the risk, expense, complexity and likely duration of further litigation; 3.) the risk of maintaining class-action status throughout the trial; 4.) the amount offered in settlement; 5.) the extent of discovery completed and the stage of the proceedings; 6.) the experience and views of counsel; 7.) the presence of a governmental participant; and 8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v Gen. Elec.* 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness, where, as here, "the settlement is recommended by class counsel after arm's length bargaining." *Wren v. RGIS Inventory Specialists, No.* C-06-05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. Apr. 1, 2011).

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. See, *Officers for Justice, supra*, 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (approving wage-and-hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) (finding "10% gross and 7.3% net figures" to be "'within the range of reasonableness'"). A review of the Settlement shows the fairness, reasonableness,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

and adequacy of its terms.

As set forth in the Whitehead Decl. ¶'s 28-36, the maximum potential damages and penalties total approximately $9,975,434, conservatively adjusted to $1,246,929 to account for overlaps, defenses, and litigation risks. The proposed settlement's proportionality to this exposure supports its approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

The proposed $165,000 Gross Settlement Amount is fair, reasonable, and adequate in light of the maximum potential exposure, as detailed in the concurrently filed Whitehead Declaration. The settlement represents approximately 13.2% of the conservatively estimated $1,246,929 maximum exposure, a percentage within the range approved in similar wage-and-hour cases. *Viceral v. Mistras Grp., Inc.*, 2016 U.S. Dist. LEXIS 140759, at *21.

However, Defendants provided data informing us that as of the date of the mediation, the number of Class Members was actually 150 current and/or former employees who worked an aggregate total of 15,844 impacted workweeks during the Class Period, working an average of 105.62 workweeks.  Thus, the proposed settlement aligns with and in some respects, exceeds the outcomes approved in other comparable cases.

The settlement's fairness is bolstered by its resolution of the unlawful Conflict of Interest Policy, a significant claim affecting all class members uniformly, but with only injunctive relief as the main remedy provided under the code. The $165,000 Gross Settlement Amount, including a $10,000 PAGA allocation, provides meaningful relief for this and takes into account the difficulty of proving the other claims, reflecting a reasonable compromise given the risks of litigation. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Therefore, the $165,000.00 GSA is a negotiated amount that resulted from substantial arm's-length negotiations following multiple settlement conferences with

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA SETTLEMENT

Lisa Klerman and significant investigation and analysis by Plaintiff's counsel.
[Whitehead Decl. at ¶ 41] Plaintiff and her counsel considered the risks of continued
litigation when evaluating the Settlement, which will result in immediate and certain
payment to Class Members of meaningful amounts. The average gross recovery is
approximately $1,100.00 per Settlement Class Member. This amount provides
significant compensation to the Settlement Class Members, and the Settlement
provides an excellent recovery in the face of expanding and uncertain litigation.
Accordingly, the settlement amount is fair, reasonable, and adequate.

A. **Extensive Discovery Allowed the Parties to Make Informed Decisions Regarding Settlement**.

The amount of discovery completed prior to reaching a settlement is important
because it bears on whether the parties and the Court have sufficient information
before them to assess the merits of the claims. See, e.g., *Boyd v. Bechtel Corp*., 485
F. Supp. 610, 617, 625 (N.D. Cal. 1979). Informal discovery may also assist parties
with "form[ing] a clear view of the strengths and weaknesses of their cases."
*Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443, 454 (E.D. Cal. 2013).
The parties here have engaged in extensive discovery that has enabled both sides
to assess the claims and potential defenses in this action, including discovery and
extensive review of time and pay records for the Class, handbooks and written
policies, and Plaintiff's personnel file. [Whitehead Decl. ¶ 14]  This allowed the
parties to accurately assess the legal and factual issues that would arise if the case
were to proceed to trial. *Id.* In addition, in reaching the Settlement, Plaintiff's
counsel relied on his substantial litigation experience in similar wage-and-hour class
actions. *Id.*  Plaintiff's counsel's liability and damages evaluation was premised on a
careful and extensive analysis of the effects of Defendant's policies and practices on
Class Members' classification and compensation.  *Id.*  Ultimately, facilitated by Lisa
Klerman, the parties used this information and discovery to fairly resolve the
litigation.  *See*, *Carter v. Anderson Merch.,* LP, No. EDCV 08-0025-VAP (OPx),

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND PAGA SETTLEMENT

2010 U.S. Dist. LEXIS 55581, at *27 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the Settlement was a product of non-collusive, arm's-length negotiations.[Whitehead Decl. ¶ 14]. The parties participated in a full day private mediation before Lisa Klerman.  The parties then spent several weeks working on the long form Settlement Agreement, with several rounds of edits related to the final details of the Settlement. Id. Plaintiff is represented by experienced and respected class-action litigators who feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id.*

**B.  The Settlement Also Provides a Fair and Reasonable Resolution for the State of California and the PAGA Employees.**

Courts have recognized that PAGA settlements must be viewed in light of PAGA's public purpose, namely augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance with California's labor laws. See, e.g., *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 U.S. Dist. LEXIS 137272, at *18 (N.D. Cal. Aug. 25, 2017); *Jordan v. NCI Grp., Inc.*, EDCV 16-1701 JVS (SPx) 2018 U.S. Dist. LEXIS 25297, at *5 (C.D. Cal. Jan. 5, 2018) ("The Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."). A court's focus is thus not the amount employees ultimately receive as a result of a settlement, but on whether the settlement achieves PAGA's objectives, even if it represents only a portion of an employer's total exposure.

Here, the PAGA Allocation of $10,000.00 represents 6.06% of the Gross Settlement Amount, well within the range of PAGA settlements previously approved in this district and other California district courts. See *Haralson v U.S. Aviation Servs. Corp.,* 383 F.Supp.3d 959, 972–74 (N.D. Cal. 2019) (citing cases reflecting approval of settlements at 0.2% to 1.1% of verdict value of PAGA penalty); *Moreno*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

*v. Capital Bldg. Maint. & Cleaning Servs.,* No. 19-cv-07087-DMR, 2021 U.S. Dist. LEXIS 87268, at *25 n.3 (N.D. Cal. May 5, 2021) (approving a PAGA allocation that exceeded the 1% benchmark "and therefore d[id] not invoke the additional concerns examined in Haralson"); *Ahmed v. Beverly Health & Rehab. Servs., Inc.,* No. 2:16-1747 WBS KJN, 2018 U.S. Dist. LEXIS 20460, at *11 (E.D. Cal. 2018) (approving PAGA settlement of $4,500, or 1% of the total settlement).

In addition, the PAGA Allocation will serve PAGA's purposes by providing a payment to the LWDA to use in furthering its mission of protecting workers and deterring future violations. Accordingly, the PAGA component of the Settlement is fair, reasonable, and adequate.

## C. The Proposed Attorneys' Fees And Costs Are Reasonable.

Subject to Court approval, the proposed Settlement requests an award of attorney's fees equal to 33.33% of the Gross Settlement Amount, or  approximately $55,000.00, in attorneys' fees plus reimbursement of reasonable actual litigation costs, supported by Declaration, in an amount not to exceed $20,000.00. [Settlement, Section 3, subsec. Q. 10;  Whitehead Decl. ¶ 45]  *"An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions." Marshall v. Northrop Grumman Corp.,* No. 16-CV-6794  AB (JCx), 2020 U.S. Dist. LEXIS 177056, at *23 (C.D. Cal. Sep. 18, 2020); see also, e.g., *Soto v. O.C. Commc'ns, Inc.,* No. 3:17-cv-00251-VC, ECF No. 304 (N.D. Cal. Oct. 23, 2019) (approving attorneys' fees of one-third of the gross settlement in hybrid FLSA/Rule 23 settlement); *Wren, supra,* 2011 U.S. Dist. LEXIS 38667 (approving attorneys' fee award of just under 42% of common fund). These awards fall within the typical range of acceptable attorneys' fees in the Ninth Circuit of 20% to 33.33% of the total settlement value.

In this case, given the excellent results achieved and the effort and risk undertaken to achieve it, an attorney fee of one-third of the GSA is warranted. [Whitehead Decl. ¶ 47] There was no guarantee of compensation or reimbursement

in this action. *Id.* Instead, counsel undertook all the risks of this litigation on a completely contingent-fee basis. *Id.* Defendants' vigorous and skillful defense confronted Plaintiff's counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. *Id.* Nevertheless, Plaintiff and her counsel committed themselves to developing and pressing Plaintiff's legal claims to enforce the Settlement Class Members' rights and maximize recovery. *Id.*

Attorneys who litigate on a wholly or partially contingent basis expect to receive higher effective hourly rates in cases where compensation is contingent on success, particularly in hard-fought cases where, like in the instant case, the result is uncertain. [Whitehead Decl. ¶ 48] Adjusting court-awarded fees upward in contingent-fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

For these reasons, Plaintiffs' counsel respectfully submits that a 33.33% recovery for fees is appropriate. [Whitehead Decl. ¶ 49] Class Counsel's efforts resulted in the excellent Settlement, and the fee and costs award should be preliminarily approved as fair and reasonable. *Id.*

**D. The Proposed Enhancement Award Is Reasonable.**

Named plaintiffs in class-action litigation are eligible for reasonable service awards. See *Staton v. Boeing Co.,* 327 F.3d 938. at 977. The enhancement payment not to exceed $5,000.00 for Plaintiff is intended to compensate her for the critical role she played in this case, including but not limited to responding to discovery, being deposed, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class Members. Settlement, § III, subsec. Q, 9] In agreeing to serve as Class Representative, Plaintiff formally agreed to accept

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

the responsibilities of representing the interests of all the Settlement Class Members. [Whitehead Decl. ¶ 52]  Plaintiff spent a substantial amount of time and effort in pursuing the class claims.  As demonstrated in Plaintiff's concurrently filed Declaration, (the "Reiss Decl.")  Plaintiff had numerous discussions with Class Counsel, worked with Class Counsel and his legal staff to review facts, answer questions, preparing for and participating in her deposition, and preparing the complaints in this action, assisted Class Counsel in mediation efforts, reviewed the proposed Settlement to understand its legal effect, and agreed to a broad release to obtain a fair settlement on behalf of Class Members. See Declaration of Plaintiff April Reiss in support of Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement, filed concurrently herewith.

Plaintiff also took on great risk in pursuing a case against a former employer. [Whitehead Decl. ¶53] By bringing this lawsuit, Plaintiff incurred a real risk of retaliation from future employers that will be present for the rest of her work life. *Id.* Such conduct may be considered by future employers when choosing between an applicant who has never sued a prior employer and one that has. *Id.* Accordingly, it is appropriate and just for Plaintiff to receive a reasonable service award in the amount of $5,000.00 in addition to her share of the Net Settlement Amount for her time and service as a Class Representative. *Id.*; see also *Golba v. Dick's Sporting Goods, Inc.* (2015) 238 Cal.App.4th 1251, 1272 (identifying "the risk … the class representative faced in bringing the suit" and "the amount of time and effort spent by the class representative" as factors supporting a service award).

Finally, Plaintiff's proposed Service Award payment is comparable to payments approved in similar cases, and Defendant does not oppose the requested payment to Plaintiff as a reasonable enhancement award. [Settlement, §III, subsec. Q, 9]. Accordingly, the proposed enhancement award is fair and reasonable, and should be preliminarily approved.

**E. The Proposed Notice Is Reasonable.**

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Class Members must receive the best notice practicable under the circumstances of the case. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1974). Procedural due process does not guarantee any particular procedure but rather requires notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village*, 361 F.3d at 575 (internal quotation marks omitted).

Here, the Notice is clear and straightforward and provides information on: (1) the meaning and nature of the proposed Settlement; (2) the terms and provisions of the Settlement, including the claims released; (3) the relief the Settlement will provide to the Class Members, including an estimate of the amount to be paid to each Settlement Class Member; (4) the amount requested by Class Counsel for attorneys' fees and costs; (5) the amount requested for the Class Representative Enhancement Payment to Plaintiff; (6) the procedure and deadlines for submitting requests to be excluded from the Settlement, objections to the Settlement, and disputes regarding Eligible Pay Periods; and (7) the date, time, and place of the final approval hearing. [Whitehead Decl. ¶ 50, Settlement, Exh A thereto.] The Notice also fulfills the requirement of neutrality in class notices. See *4 Newberg on Class Actions*, §8.12. [Whitehead Decl. ¶51; Settlement, Exh. A thereto]. It summarizes the proceedings to date and the terms and conditions of the Settlement in an informative and coherent manner, in compliance with the Manual for Complex Litigation's instruction that a class-action notice should state essential terms "concisely and clearly … in plain, easily understood language." See *Manual for Complex Litigation* § 21.31; [Whitehead Decl. ¶51, Settlement, Exh A thereto.] The Notice clearly states that the

26

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT

Settlement does not constitute an admission of liability by Defendant and recognizes that the Court has not ruled on the merits of the Action. *Id.* It also states that the Court has not yet made a final settlement approval decision. *Id.*  Accordingly, the Court should approve the Notice and authorize its dissemination to the Class Members.

**VII.       CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Class and PAGA Settlement.

Respectfully Submitted,


Dated: June 23, 2025                W EMPLOYMENT LAW, APC


By:  _____
Jacob N. Whitehead
Attorney for Plaintiff, April Reiss
the Putative Class and Aggrieved Employees

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA SETTLEMENT                    90646750.v1-OGLETREE